**SO ORDERED.**

**SIGNED this 5 day of March, 2014.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| JAMES E. COFIELD, JR. | 11-02034-8-SWH |
| DEBTOR | |
| | |
| CADLES OF GRASSY MEADOWS II, LLC | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | H-12-00227-8-AP |
| JAMES E. COFIELD, JR. | |
| Defendant. | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

The matter before the court is the motion filed by the plaintiff, Cadles of Grassy Meadows II, LLC, seeking summary judgment on its claims brought in this adversary proceeding pursuant to §§ 523(a)(4) and (a)(6). A hearing took place in Raleigh, North Carolina, on December 3, 2013. For the reasons that follow, the motion will be denied.

## BACKGROUND

James E. Cofield, Jr. filed a petition for relief under chapter 11 of the Bankruptcy Code on March 17, 2011. On April 6, 2012, the case was converted to one under chapter 7 of the Bankruptcy Code. After the time to object to dischargeability was extended multiple times by various parties in interest, Cadles of Grassy Meadows II, LLC ("Cadles") filed the complaint initiating this adversary proceeding on September 7, 2012, seeking a declaration of nondischargeability pursuant to §§ 523(a)(4) and (a)(6) as to a debt evidenced by a state court judgment. This matter stems from a mid-1980's business arrangement between Coolidge Bank and Trust Company and Malmart Mortgage Company, an entity of which the debtor was president. Under the arrangement, Coolidge advanced funds to Malmart, which Malmart used to make consumer construction loans. The mortgages securing such loans were pledged to Coolidge as security. In 1987, Coolidge brought suit against the debtor, in his individual capacity, among others, alleging conversion and unfair or deceptive trade conduct in connection with the satisfaction of three mortgages without Coolidge's consent and without repayment to Coolidge. After a trial in the Massachusetts Superior Court, a jury found that the debtor converted funds and engaged in unfair or deceptive trade conduct, and awarded Coolidge compensatory damages of $324,000. The Massachusetts court entered an order to this effect on June 2, 1993, and additionally found that treble damages were not warranted, instead awarding double compensatory damages pursuant to the relevant statute, in the amount of $648,000 (the "Judgment"). The Judgment was subsequently assigned to Cadles.

Cadles first contends that debtor held the subject mortgages in trust for Coolidge and failed to repay Coolidge upon satisfaction of the mortgages, resulting in defalcation while acting as a fiduciary for Coolidge. As such, Cadles asserts that the debt evidenced by the Judgment is

nondischargeable pursuant to § 523(a)(4) and seeks summary judgment on this claim. At the hearing, however, the court determined that the existence of the requisite trust relationship would require a factual determination and thus summary judgment is inappropriate with regard to Cadles' claim under § 523(a)(4).

Second, Cadles seeks summary judgment on its claim that the debt evidenced by the Judgment constitutes a nondischargeable debt pursuant to § 523(a)(6). Specifically, Cadles contends that the debt is premised upon a willful and malicious injury caused by the debtor and that the Judgment and the factual findings supporting it should be afforded collateral estoppel effect, precluding the debtor from contesting Cadles' nondischargeability claim under § 523(a)(6), and warranting summary judgment in favor of Cadles. The debtor, on the other hand, contends that collateral estoppel does not apply because the determinations made in the Massachusetts action are not identical to a § 523(a)(6) assessment. The debtor asserts that the Massachusetts statute in question encompasses both intentional and reckless conduct, thereby exceeding the scope of § 523(a)(6), which only applies to intentional acts. In addition, the debtor argues that the Judgment is not a finding that the injury was both willful and malicious, as required by § 523(a)(6).

## DISCUSSION

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993,

994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." <u>Celotex</u>, 477 U.S. at 327, 106 S. Ct. at 2555. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex</u>, 477 U.S. at 323, 106 S. Ct. at 2552. Summary judgment should not be granted "unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy." <u>Portis v. Folk Constr. Co.</u>, 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

Cadles maintains that the debtor is collaterally estopped from contesting its nondischargeability claim under § 523(a)(6) in light of the findings of fact and rulings of law contained in the Judgment. In order to determine whether a state court judgment has a preclusive effect on the litigation of issues in a bankruptcy court, a federal court must apply the law of the state in which the judgment was entered. <u>Marrese v. American Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985). Based on the issuance of the Judgment by a Massachusetts court, the applicable law of collateral estoppel is as follows:

> Under Massachusetts law, collateral estoppel precludes relitigation of issues in prior actions between the parties or those in privity with those parties, provided the issues were actually litigated in the first action, and determined by a "final judgment on the merits." <u>Smith Barney, Inc. v . Strangie (In re Strangie)</u>, 192 F.3d 192, 194 (1st Cir. 1999). To apply the doctrine, a court must determine that: (1) there was a valid and final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior litigation; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue in the prior litigation was essential to the earlier judgment. <u>Alba v. Raytheon Co.</u>, 441 Mass. 836, 842 (Mass. 2004) (citations omitted).

Trenwick Am. Reinsurance Corp. v. Swasey (In re Swasey), 488 B.R. 22, 32-33 (Bankr. D. Mass. 2013). Here, it is undisputed that the Judgment constitutes a final judgment and that the party against whom estoppel is asserted was a party to the prior litigation. Accordingly, the court must determine whether the present issue is identical to the issue in the prior matter and whether the issue was essential to the Judgment.

The central issue in this adversary proceeding is whether the debtor willfully and maliciously injured Cadles or its property. Section 523(a)(6) of the Bankruptcy Code provides that a discharge under chapter 7 will not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In Kawaauhau v. Geiger, 523 U.S. 57 (1998), the Supreme Court clarified the § 523(a)(6) standard, establishing that because the word 'willful' modifies the word 'injury,' "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." 523 U.S. 57, 61 (1998). In other words, the court must find an intentional injury in order to support a finding of nondischargeability under § 523(a)(6). See Cmty. Sav. Bank, Inc. v. Rountree (In re Rountree), 2002 Bankr. LEXIS 2132 (Bankr. M.D.N.C. 2002). In addition, § 523(a)(6) requires a finding that the debtor's actions were malicious. See E.L. Hamm & Assocs., Inc. v. Sparrow (In re Sparrow), 306 B.R. 812, 838 (Bankr. E.D. Va. 2003) (noting, after discussing the Geiger decision's clarification of 'willful injury,' that "[s]ince *Geiger*, the malice prong of § 523(a)(6) appears unchanged").[1] A debtor acts with malice for purposes of § 523(a)(6) if the injurious act is

---

[1] Some courts have determined that post-Geiger, 'willful and malicious injury' has become a single standard requiring proof of an intentional injury. See Cmty. Sav. Bank, Inc. v. Rountree (In re Rountree), 2002 Bankr. LEXIS 2132, *18 n. 4 (Bankr. M.D.N.C. 2002) (although holding that both willfulness and malice must be found in order to satisfy § 523(a)(6), observing that "[t]here is some authority that 'willful and malicious injury' is now a single standard requiring proof of an

5

committed "deliberately and intentionally in knowing disregard of the rights of another." First Nat'l Bank of Maryland v. Stanley (In re Stanley), 66 F.3d 664, 667 (1995). The party challenging dischargeability bears the burden of proving that the debt is nondischargeable by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 291 (1991).

Thus, for collateral estoppel to apply, the issues of whether the debtor intended to injure Cadles (i.e., willfulness) and acted in knowing disregard of Cadles' rights (i.e., malice) must have been litigated in state court, as well as have been essential to the Judgment.[2] Making such a determination necessarily depends on the content of the Judgment. The Judgment, because of its concise language, presents a challenge for purposes of a summary judgment motion on a § 523(a)(6) nondischargeability action. Based on the importance of the Judgment's language, the portion relevant to the debtor is provided below in its entirety:[3]

> This case was tried before a jury which found, upon special questions, that the defendant James E. Cofield **converted** certain funds of Coolidge Bank & Trust Company and that he **knowingly or willingly engaged in unfair or deceptive conduct** relative to the credit and warehousing agreement between Malmart Mortgaging Company and Coolidge Bank & Trust Company. The jury awarded the plaintiff the sum of $324,000 in damages. The parties agreed to submit to the jury the plaintiff's claim under G.L. c. 93A, § 11 and to

---

intentional injury as a result of the Supreme Court decision in Kawaauhau v. Geiger," and citing In re Miller, 156 F.3d 598, 605 (5th Cir. 1998) and In re Longley, 235 B.R. 651, 656 n. 5 (10th Cir. BAP 1999)); but see McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 20 (Bankr. D. Me. 1998) (finding that Geiger "should not be read to collapse the two elements [of willfulness and malice] into one," as all words in a statute are meant to be given effect).

[2] Although the actual party involved in the state court litigation was Cadles' predecessor, Coolidge Bank and Trust Company, the court will consider "Cadles" synonymous with Coolidge for purposes of consistency.

[3] Of the two paragraphs contained in the Judgment, the final paragraph is not relevant to this proceeding, in that it dismisses a cause of action for fraud in the conveyance of certain real property by the debtor to Joyce B. Cofield, another defendant in the action.

> be bound by the jury's decision. The jury's finding that the defendant James Cofield knowingly or willfully engaged in deceptive acts or practices in violation of G.L. c. 93A, § 11 requires recovery of not less than double but not more than treble the compensatory damages. Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 475 (1991). After consideration of all credible evidence, the court does not find that the violation of G.L. c. 93A was of such a nature as to warrant the imposition of treble damages. International Fidelity Insurance Co. v. Wilson, 387 Mass. 841 (1983). Therefore, in the exercise of the court's discretion, the court hereby ORDERS the entry of judgment in the amount of double the compensatory damages, or the sum of $648,000.00.

Order on Plaintiff's Motion to Approve Form of Judgment on Special Verdict and on Defendants' Renewed Motion for a Directed Verdict, Commonwealth of Mass., Sup. Ct. Civil Action No. 87-6142 (emphasis added). The "special questions" referenced in the Judgment are provided as follows, in pertinent part:[4]

> Q.1. Did the defendant, James E. Cofield, Jr., exercise dominion over the refinancing proceeds of the Wood/Ratner, Fitzpatrick and Growdowski construction loans and/or over the collateral for such loans, either individually or collectively, in a manner inconsistent with the rights of Coolidge Bank & Trust Company?
>
> Q.2. Did the defendant, James E. Cofield, Jr., engage in any unfair or deceptive act or practice relative to the credit and warehousing agreement between Malmart Mortgage Company and Coolidge Bank & Trust Company?
>
> Q.3. Please state what amount of damages, if any, would compensate the plaintiff, the Federal Deposit Insurance Corporation, for the acts of the defendant, James. E. Cofield, Jr.
>
> Q.4. Did the defendant, James E. Cofield, Jr., engage in any unfair or deceptive act or practice knowingly or willfully?

---

[4] One question related to the conveyance of real property to Joyce Cofield has been omitted, as it is not relevant to this proceeding.

7

Questions for the Jury, Commonwealth of Mass., Sup. Ct. Civil Action No. 87-6142. The jury answered each question affirmatively, and as to Q.3., stated the amount of damages as $324,000.

The Judgment therefore consists of two primary components: (1) the underlying compensatory damages award, for which the jury awarded compensatory damages of $324,000, and (2) the judge's doubling of the compensatory damages based on the violation of the unfair and deceptive conduct statute. The first component, the underlying compensatory damages award, consists of two findings: (a) common law conversion and (b) unfair and deceptive conduct pursuant to statute. In order to identify the issues before the jury in the state court action for purposes of determining whether the Judgment has collateral estoppel effect, this court must examine the jury's findings of conversion and unfair and deceptive conduct and the essential elements required for those findings.

**A.     Conversion**

The jury found that the debtor converted certain funds belonging to Cadles. The Judgment, however, is silent as to the legal standard employed by the jury in arriving at its finding of conversion. Special question Q.1. appears to address the legal standard in part, as it asks if the debtor exercised dominion over Cadles' property in contravention of Cadles' rights, yet there is no indication of whether the jury found that the debtor acted with the intent to injure Cadles and in knowing disregard of Cadles' rights. Under Massachusetts law, conversion occurs when one "intentionally or wrongfully exercises acts of ownership, control or dominion over personal property to which he has no right of possession at the time." Abington Nat'l Bank v. Ashwood Homes, Inc., 19 Mass. App. Ct. 503, 507 (Mass. App. Ct. 1985). The problem with this standard, for the court's purposes in this proceeding, is that it requires an intentional act *or* a wrongful act.

Section 523(a)(6), on the other hand, has two requirements: willful *and* malicious injury. Even if "wrongfulness" under Massachusetts law equates to maliciousness under § 523(a)(6), the record is silent as to whether the jury based its finding of conversion on intentional acts only, wrongful acts only, or both. The court therefore holds, as to the jury's finding of conversion, that the legal standard under Massachusetts law is not identical to the legal standard contained within § 523(a)(6), rendering the doctrine of collateral estoppel inapplicable.

**B.** **Unfair or Deceptive Conduct**

In support of the underlying compensatory damages award, the jury further held that the debtor knowingly *or* willfully engaged in deceptive acts or practices in violation of Massachusetts statute G.L. c. 93A. Again, the Judgment does not specify whether the jury found that the debtor knowingly engaged in the acts causing the injury, willfully engaged in the acts causing the injury, or both. Without more information, the court cannot conclude that the statutory issue determined by the jury is identical to the present issue under § 523(a)(6). In fact, at least one court has held that the Massachusetts statute at issue is broader than § 523(a)(6), in that it encompasses reckless conduct in addition to intentional conduct. See Trenwick Am. Reinsurance Corp. v. Swasey (In re Swasey), 488 B.R. 22, 44-45 (Bankr. D. Mass. 2013). The court therefore holds, as to the jury's finding of willful *or* knowing deceptive conduct in violation of Massachusetts statute G.L. c. 93A, and in light of the differences between the Massachusetts standard and the standard under § 523(a)(6), the doctrine of collateral estoppel is inapplicable to this component of the Judgment.

### C. The Award of Double Compensatory Damages

At the time the Judgment was rendered, Massachusetts statute G.L. c. 93A provided that if an unfair or deceptive act was found to be "willful or knowing" in nature, "recovery shall be in the amount of actual damages; or up to three, but not less than two, times [the] amount ... [of actual damages]." Mass. Ann. Laws ch 93A, § 11 (1993). The judge, in her discretion, determined that treble damages were not warranted, and instead imposed double compensatory damages, in the total amount of $648,000. This component of the Judgment presents the same issue as the underlying finding of unfair and deceptive conduct: it is based on knowing *or* willful actions, and once again, there is not enough information to determine whether findings of both willfulness and maliciousness were made. As such, the issues are not identical and collateral estoppel does not apply.

### CONCLUSION

The motion for summary judgment on the claims pursuant § 523(a)(4) is denied, in light of the factual determination necessary with regard to the existence of the requisite trust relationship. Further, the motion is denied on the claims pursuant to § 523(a)(6), as the findings contained within the Judgment are not sufficient for this court to rule that the issue of willful and malicious injury was resolved in state court. The Judgment therefore does not support the application of collateral estoppel to Cadles' nondischargeability claim under § 523(a)(6).

Accordingly, the motion for summary judgment is **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**